UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CATHERINE ELIZARRAZ, ) | |
| ) | |
| Plaintiff, ) | Case No. CV09-05616 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties have stipulated to the following summary of the procedural facts.[See JS 2]. On February 27, 2007, plaintiff filed applications for disability insurance benefits and SSI benefits. [Administrative Record ("AR") 103]. Plaintiff alleged disability due to carpel tunnel syndrome; lumbar and cervical disc disease with radiculopathy; diabetes type II; hypertension; degenerative joint disease of the knees, anxiety, and arthritis. [AR 104]. The Commissioner denied the application at the initial and reconsideration stages. [AR 64].

1  On January 6, 2009, a hearing was conducted by an Administrative Law Judge (the "ALJ"). [AR 19].
2 On February 3, 2009, the ALJ denied plaintiff's applications in a written hearing decision. [AR 17].

3  The ALJ made the following findings. Plaintiff suffered from severe impairments consisting of leg
4 edema; arthralgia and arthritis with chronic back pain and right lower extremity numbness; and obesity. Her
5 impairments, however, did not meet or equal a listed impairment. Plaintiff's subjective complaints were not
6 fully credible.  She retained the residual functional capacity ("RFC")  to perform sedentary work, with
7 occasional pushing, pulling, lifting and reaching with the right upper extremity, and could occasionally use
8 foot controls with the right lower extremity. Plaintiff could not climb ladders, ropes or scaffolds, but she
9 could occasionally climb ramps or stairs.  She could occasionally balance, stoop, kneel, and crouch, but not
10 crawl. Plaintiff could occasionally walk on uneven ground, and could use a hand-held device for prolonged
11 ambulation, when walking on uneven terrain, or ascending and descending slopes. She could occasionally
12 perform gross manipulation with the right upper extremity.  She must avoid all exposure to hazardous
13 machinery, unprotected heights, and other high-risk, hazardous or unsafe conditions. Plaintiff's RFC did
14 not preclude her from performing her past relevant work as a collection clerk. [AR 13-16].

15  Accordingly, the ALJ concluded that plaintiff was "not disabled" at any time through the date of his
16 decision. [AR 17].  On June 5, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's
17 decision. [AR 1, 6].

**Standard of Review**

19  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
20 evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
21 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
22 a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
23 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
24 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is
25 required to review the record as a whole and to consider evidence detracting from the decision as well as
26 evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
27 Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than
28 one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in rejecting the opinions of her treating physician, Charlie Chan, M.D. [See JS 4-10].

Progress notes in the record indicate that Dr. Chan treated plaintiff from June 2006 through November 24, 2008. During the hearing in January 2009, plaintiff testified that she continued to see Dr. Chan, her family doctor, every month or every other month. [AR 37]. The progress reports from Dr. Chan indicate that plaintiff saw him for intermittent complaints of pain and swelling in the right knee, swelling of the feet, headache, left shoulder pain, neck pain, and a rash. Dr. Chan also treated her for type-2 diabetes, hypertension, hyperlipidimia, elevated creatinine, anemia, and diabetes. Dr. Chan prescribed medication, including, in various combinations, the anti-inflammatory naproxen, Tylenol 500 milligrams four times a day as needed for pain; the diabetes medications metformin, Amaryl (glimepiride), and Actos (pioglitazone); and the anti-hypertensive medications losartan, benazepril, Norvasc (anlodipine) and Maxzide (triamterene and hydrochlorothiazide). He also advised plaintiff to exercise and to adhere to a low-fat, low-sodium, 1800 calorie-per-day diet. [See AR 302-372].

On November 24, 2008, Dr. Chan completed a "Physical Residual Functional Capacity Questionnaire." [AR 374-377]. Dr. Chan stated that plaintiff had diagnoses of diabetes mellitus, hypertension, hyperlipidimia, obesity, right knee pain, and lower back pain. [AR 374]. He described her subjective symptoms as knee pain, headache, back pain, tiredness, body ache, pain, and dizziness. [AR 374]. He said that plaintiff had "sharp" pain located in the knees and lower back pain that was present every day and was precipitated by walking. Dr. Chan rated plaintiff's pain as a "7" on a 1-through-10 scale. [AR 374]. Asked to identify clinical findings and objective signs supporting his diagnosis, prognosis, and description of plaintiff's symptoms and resulting limitations, Dr. Chan wrote "no limitation of knee pain with movement, hard to get up and get down due to back pain, use cane to walk due to knee pain." [AR 374]. Regarding plaintiff's treatment and response, Dr. Chan noted that plaintiff currently was taking "Tylenol, losartan, Amaryl, ASA [acetylsalicylic acid (aspirin)], [and] Maxzide-25." [AR 374]. Dr. Chan also remarked that he discontinued naproxen and Actos because they affected plaintiff's kidney and caused leg

1   swelling, and that the swelling improved when those medications were discontinued. [AR 374].

2   Dr. Chan said that neither emotional factors nor any psychological condition contributed to the
3   severity of plaintiff's physical symptoms. [AR 375].  He opined that during a typical eight-hour workday,
4   with a morning, lunch, and afternoon breaks, plaintiff's pain or other symptoms would "constantly" interfere
5   with the attention and concentration necessary to sustain simple, repetitive work tasks.  Plaintiff was
6   "[i]ncapable of even 'low stress' work."  [AR 375].  Dr. Chan opined that during an eight-hour work day,
7   plaintiff could not sit for more than thirty minutes at a time or less than two hours total, stand for more than
8   five minutes before needing to alternate positions, and could stand or walk for less than two hours total out
9   of eight. [AR 375-376].  Plaintiff would require two extra unscheduled breaks in a two-hour period. [AR
10  376].  Plaintiff could lift and carry less than ten pounds occasionally. [AR 376]. She could occasionally
11  stoop or bend, but never twist, crouch, and climb ladders or stairs. [AR 376].  Plaintiff was not limited in
12  repetitive reaching, handling, or fingering. [AR 376].  She had to avoid temperature extremes. [AR 377].
13  Plaintiff's limitations were likely to produce "good days" and "bad days." [AR 377].  Dr. Chan estimated
14  that plaintiff would be absent from work due to her impairments or for necessary medical care more than
15  four days per month. [AR 377].

16  A treating physician's opinion is not binding on the Commissioner with respect to the existence of
17  an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.
18  2001).  Where, however, a treating physician's medical opinion as to the nature and severity of an
19  individual's impairment is well-supported and not inconsistent with other substantial evidence in the record,
20  that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.  2001);
21  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.  2001); see 20 C.F.R. §§ 404.1527(d)(2),
22  416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.  Even when not entitled
23  to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed"
24  in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and
25  extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other
26  evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-
27  2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

28  If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,

supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ stated that Dr. Chan's opinion was "not credible and [was] given very little weight because there is much speculation expressed in his report without sufficient supporting objective medical evidence . . . ." [AR 16]. The ALJ instead gave weight to the opinions of the Commissioner's examining internist, Dr. Klein, and the nonexamining state agency physician, Dr. Friedman. On the basis of his unremarkable internal medicine examination findings, Dr. Klein concluded that plaintiff had visual limitations but no other physical restrictions. Dr. Friedman opined that plaintiff could perform light work. [AR 219-225, 275-282]. After taking plaintiff's subjective testimony into account, the ALJ found that plaintiff could perform a range of sedentary work. [AR 14].

The questionnaire asked Dr. Chan to identify "all clinical findings or objective signs supporting" his opinion, but the only evidence he cited was plaintiff's knee and back pain, which is a subjective symptom. Dr. Chan did not mention any objective signs or clinical findings, such as x-ray or other imaging studies, or positive clinical examination findings that are considered reliable indicators of a back or knee impairment. See 20 C.F.R. §§ 404.1528, 416.908 (defining symptoms, signs, and laboratory findings). Dr. Chan observed that plaintiff used a cane to walk due to knee pain, but he did not mention prescribing a cane in his description of the treatment provided, nor did he state that a cane was medically necessary. In addition, Dr. Chan did not respond to questions asking: (1) whether plaintiff's physical and emotional impairments were "reasonably consistent" with the symptoms and functional limitations he described, and (2) for an explanation of his conclusion that plaintiff was incapable of even low stress work. [AR 375].

Plaintiff has not cited to any findings in Dr. Chan's progress notes that fill in the gaps in his questionnaire responses. Even when she presented with pain complaints, plaintiff was routinely described as in "no acute distress," with pain scores ranging from a low of "0" to a high of "4" out of 10. In contrast, Dr. Chan said that plaintiff had a pain score of 7 out of 10. [AR 305, 309, 324, 345-346, 365]. Furthermore, x-rays taken in January 2008 showed only "[m]ild left acromioclavicular joint osteoarthritis" in the left shoulder and "[m]inimal degenerative changes, characterized by anterior end plate osteophytes" in the

cervical spine. Those studies were otherwise "unremarkable." [AR 347-349]. In August 2008, plaintiff was noted to have left shoulder pain and cervical pain, both with "mild" degenerative joint disease. [AR 338]. There do not appear to be any references to plaintiff's using or needing a cane to ambulate.

The ALJ permissibly rejected Dr. Chan's opinion based on the absence of objective or clinical findings supporting his opinion. The opinions of the examining and nonexamining physicians together served as substantial evidence supporting the ALJ's RFC assessment. See Tonapetyan, 242 F.3d at 1149 (holding that the ALJ permissibly rejected a treating physician's opinion "because it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions," and noting that the contrary opinions of an examining and non-examining physician "serve as additional specific and legitimate reasons for rejecting the opinions" and also constitute substantial evidence because they are based on objective findings independent of those relied on by the treating physician).

Accordingly, plaintiff's contention lacks merit.

**Credibility finding**

Plaintiff also contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. [See JS 10-14].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective

complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same).  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff contends that the ALJ erroneously rejected plaintiff's subjective allegation that "she can only perform about 2 hours of activity per day.  This is consistent with the treating doctor." [JS 12].  For the reasons already described, however, the ALJ permissibly rejected Dr. Chan's disability opinion. Furthermore, it is evident from the record that while the ALJ did not find plaintiff's subjective symptom testimony entirely credible, he carefully considered that testimony and factored it into his detailed RFC assessment.

During the hearing in January 2009, plaintiff was represented by counsel and testified on her own behalf.  She said that she had been misdiagnosed with myasthenia gravis with ptosis (eyelid droop),  an autoimmune neuromuscular disease.  Plaintiff said that she had to be hospitalized due to the effects of the steroids that were unnecessarily prescribed to treat that condition. [AR 30-32]. Plaintiff testified (and the ALJ found) that her misdiagnosis and treatment for myasthenia gravis occurred in 2006, but plaintiff apparently confused the dates, because medical and social security claim file records indicate that those events occurred in 2007. [See AR 15-16, 30-32, 228-274, 279-281, 286-288, 368].

Plaintiff also testified that she had developed kidney problems and swelling in her lower extremities due to one of her diabetes medications, along with generalized fatigue and weakness.  She said since that medication (metformin) had been discontinued, her swelling was under control and her kidney problems seemed to be getting better.  However,  she was still waiting to be evaluated at a kidney clinic. [AR 31-32, 44].

When asked by the ALJ what the "biggest problem" was preventing her from working, plaintiff answered: "I have back pain, I'm unable to use my right leg normally from my knee to my thigh.  I get very tired and I'm weak a lot.  To maintain an occupation which only I know is collections [sic] would be almost completely impossible on a daily basis." [AR 33].  Plaintiff testified that she had back pain on the right side toward the middle of her back that radiated down to her right knee.  She said that her leg  pain could turn into numbness from the knee up, and that her hands became numb from the fingertips to her wrist on the right side.  She described her pain as constant. [AR 33-34]. Plaintiff said that Tylenol relieved her pain for

1   two to three hours, and that she had been prescribed a new pain medication that was not effective. [AR 34-
2   35, 37-38]. She said that standing for too long or leaning against the sink to wash dishes caused numbness,
3   and that she needed to sit and elevate her legs to relieve it. [AR 35]. She had to elevate her legs "[m]aybe
4   once or twice" a day, but sometimes she just endured it and took her medication. [AR 35-36]. Plaintiff said
5   that her anemia was "pretty much handled," but she had a "little bit of anemia still." [AR 32, 37]. She did
6   not know what was causing her feelings of fatigue and weakness, and her doctors had not been able to
7   determine a cause. [AR 36].

8           Plaintiff stated that she was five feet, one and three-quarter inches tall, and that she weighed two
9   hundred and forty-five pounds. She testified that she was watching her diet and had lost about twenty
10  pounds in the last six months. [AR 39].

11          Plaintiff testified that she lived with a friend who paid rent and occupied part of her house. [AR
12  27-28, 41-42]. She fixed breakfast, lunch, and dinner; cleared the table; washed and put away dishes;
13  cleaned and straightened up, but did not vacuum; watched television; drove a car to go shopping twice a
14  month and to doctors' appointments; did laundry; and cared for her personal hygiene. [AR 39-40]. She used
15  a cane to ambulate during the hearing, and she said that she used it "[h]ome and out." [AR 40]. Asked
16  whether her doctor told her she needed a cane, plaintiff replied, "I told him I didn't have a choice. . . . I
17  asked for a cane but he said they don't give them there." [AR 40]. She did embroidery as a hobby and made
18  candy for the holidays. [AR 41]. Plaintiff's housemate helped her with chores she could not perform. [AR
19  27-28, 41-42]. Plaintiff said that she did not have a limitation on sitting as long as she used a back roll for
20  lumbar support. She also said that she used a footstool at home. [AR 43]. Plaintiff had numbness in her
21  right arm, not her left. [AR 43-44].

22          The ALJ credited plaintiff's subjective testimony insofar as he gave her a significantly more limited
23  RFC than either the examining or nonexamining physicians. The ALJ articulated specific, convincing
24  reasons supporting his credibility evaluation. He noted that plaintiff's subjective complaints were not fully
25  corroborated by the objective medical evidence. See Burch, 400 F.3d 676, 681 (9th Cir. 2005)("Although
26  lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the
27  ALJ can consider in his credibility analysis."). In addition, both the examining and nonexamining
28  physicians concluded that plaintiff could perform at least light work, even with her then-operative diagnosis

of myasthenia gravis, and their opinions were consistent with the medical record as a whole. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's pain testimony based, in part, on the an examining physician's opinion indicating that the claimant was not disabled); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (holding that the ALJ permissibly discredited the claimant's excessive pain complaints based, in part, on an examining doctor's opinion that the claimant was capable of sedentary work). The ALJ noted that plaintiff actually did not have myasthenia gravis, and that she had recovered from the adverse effects of her unnecessary treatment for that condition. [See AR 15-16]. In fact, plaintiff testified that she had recovered more quickly than the ALJ indicated. The ALJ reported that plaintiff said that it had "taken until now"—that is, January 2009—"to recover from the decrease in red and white blood cells" [AR 15-16], but that is incorrect. Plaintiff testified that it had taken merely six months for her blood cells to return to normal, and she denied that she had limitations from the residual effects of her steroid treatment as of the date of the hearing. [See AR 15-16, 31-32, 36; see AR 279-281].

      The ALJ also noted that nothing in plaintiff's testimony suggested that she was disabled by stroke, kidney failure, or diabetes, as she initially alleged in her disability report. [AR 16, 127]. Her hypertension and hyperlipidimia were controlled with medication. [AR 15]. The ALJ pointed to plaintiff's daily activities and course of treatment, which did not even include narcotic pain medication, as further evidence that her subjective symptoms were not as severely limiting as she alleged. [AR 16]. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and her "minimal, conservative treatment").

      The ALJ also mentioned plaintiff's "work history" in his credibility analysis. [AR 16]. The ALJ asked plaintiff during the hearing whether she had looked for or applied for a job since her alleged onset date of June 14, 2005. [AR 22]. Plaintiff testified that in 2006, she went to a temporary employment agency seeking a job, but the agency "wanted [her] to do greater work than [she] was qualified for," so they were unable to place her. [AR 22-23]. Her earnings record indicated that plaintiff received $1,400 in wages from "RHI Staffing Agency" in 2006, but plaintiff testified that she received no earnings from the agency in

1  question. [AR 23, 111, 119].

2  Although the ALJ characterized that incident as an "unsuccessful work attempt" and did not consider it to be substantial gainful activity, he was permitted to consider the inconsistency between plaintiff's conduct in attempting to find work and her allegations of disabling subjective symptoms. See Demaria v. Apfel, 1998 WL 30015, at *5 (N.D. Cal. 1998) (holding that the claimant's admission that he was actively looking for work but was unable to get hired was a "tacit admission that [he] could perform substantial gainful activity," and that "[the claimant's] job search efforts discredited his allegations of disability") (citing Sample v. Schweiker, 694 F.2d 639, 642, 643 (9th Cir. 1982); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)); see generally Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (stating that an ALJ may consider the claimant's "work record" and may employ ordinary techniques of credibility evaluation, considering, for example, prior inconsistent statements concerning a claimant's symptoms).

The ALJ articulated legally sufficient grounds for discounting the alleged severity of plaintiff's subjective complaints. Accordingly, plaintiff's arguments lack merit.

### Conclusion

The Commissioner's decision is based on substantial evidence in the record and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

November 16, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge